## IN THE CIRCUIT COURT OF GREENE COUNTY, MISSOURI

ARTURO SALCEDO, )
)
    Plaintiff, )
)
v. ) Case No.: 2031-CC00910
)
ERIE CONSTRUCTION )
MID-WEST, INC., )
)
    Defendant1. )

### PETITION FOR DAMAGES

COMES NOW Plaintiff, Arturo Salcedo, by and through his attorneys of record, Hall Ansley, P.C., and for his cause of action against Erie Construction Mid-West, Inc., states, alleges and avers to the Court as follows:

### PLAINTIFF

1.    Plaintiff Arturo Salcedo (hereinafter "Plaintiff") is a resident of Greene County, Missouri.

### DEFENDANTS

2.    Defendant Erie Construction Mid-West, Inc., (hereinafter "Erie Construction" or "Defendant") is a corporation organized and existing under the laws of the state of Ohio. Erie Construction conducts business in the state of Missouri. Erie Construction may be served by serving its registered agent at the address listed in the caption.

Exhibit A

## VENUE AND JURISDICTION

3. The injuries suffered by Plaintiff on account of the actions of Defendant were first sustained in Greene County, Missouri.

4. Plaintiff seeks damages in excess of $25,000.00.

5. Plaintiff filed a Charge of Discrimination with the Missouri Commission on Human Rights.

6. The Missouri Commission on Human Rights issued a Right to Sue Letter permitting plaintiff to file a claim in circuit court. A true and correct copy of the Right to Sue Letter is attached hereto as Exhibit "A" and incorporated herein by reference.

7. It has been less than ninety (90) days since the right to sue letter was first issued.

8. On information and belief, Erie Construction has had more than six (6) employees in the last calendar year.

9. Pursuant to Section 506.500 RSMo. and Section 508.010(6) RSMo., this court has jurisdiction and venue in this cause.

## FACTS OF THE OCCURRENCE

10. Plaintiff hereby restates, reincorporates, and realleges all preceding paragraphs as though fully restated herein *in haec verba*.

11. Plaintiff was employed by Defendant.

12. Plaintiff started working for the Defendant as a canvasser on or about March 15, 2018.

13. As a canvasser, Plaintiff would go to residential neighborhoods in a vehicle and knock on doors to find potential clients.

14. The vehicle was typically operated by Mike Kleffner (the canvassing manager) or Tom Chapman (senior canvasser).

15. The driver would decide the territory and where each employee would knock.

16. Plaintiff is African American and is a protected individual pursuant to the Missouri Human Rights Act.

17. Throughout his employment with Erie Construction, Plaintiff was called a "n*gga" by co-workers and managers.

18. On or about January 24, 2019, a general manager, Patrick Matson, came from out-of-town.

19. During the visit Plaintiff was told that he had not been called a "n*gga" that day because the "higher ups" were in town.

20. Plaintiff reported this comment and another employee threatened to fight Plaintiff after he made the report.

21. Erie employees had a meeting On or about February 11, 2019.

22. During the meeting Mr. Kleffner told Plaintiff the next time Mr. Kleffner heard anyone say any variation of the N-word -- he or she would be fired on the spot.

23. Plaintiff mentioned to Mr. Kleffner that he felt as if the employees should get together to discuss the issues with another employee named Clinton.

24. Clinton was off work and was not present at the meeting.

25. After this discussion, Plaintiff was pulled into the office along with another employee, Tom.

3

26. Tom said he and Plaintiff used to be friends "but then that 40-year-old c*nt came along"— referring to Plaintiff's roommate (Lori) – a fellow employee of the company.

27. Also on or about the February 11, 2019, Mr. Kleffner decided to get out and knock on doors with Lori.

28. Tom and Plaintiff remained in the van and drove to the gas station.

29. On the way to the gas station Tom turned on the radio. It was mostly static.

30. Plaintiff asked Tom if he could turn down the radio.

31. Tom rolled down his window rather than acknowledge Plaintiff's request.

32. Plaintiff reached in the front seats and rolled the windows up, then asked Tom again if he could turn the radio off because of the static.

33. Tom again ignored Plaintiff, so Plaintiff reached up and turned down the radio.

34. Tom proceeded to again increase the volume and said, "what's wrong--don't like country music because it doesn't say nigger in it?!"

35. Once Mr. Kleffner returned, Tom began arguing with Plaintiff and said, "it's like you want me to call you nigger."

36. Plaintiff responded that he did not want to be called "n*gger."

37. Mr. Kleffner then told Tom he was off for the rest of the week.

38. Tom said "whatever dude," got out of the vehicle, and walked down the street.

39. Tom returned to work the next day and, on information and belief, was not disciplined.

40. On or about February 12, 2019, Mr. Matson called and spoke to Plaintiff about the fact Clinton and Tom had not been suspended or fired for saying the n-word.

4

41. Clinton was subsequently terminated after the conversation.

42. Tom's conduct was never addressed because Plaintiff was told that Clinton was the "root of the problem."

43. On or about February 18, 2019, Plaintiff was told to come in an hour early because "everyone" was having performance reviews.

44. When Plaintiff arrived, he was the only person having a performance review.

45. Plaintiff was told that his performance was not good.

46. Plaintiff argued that his performance suffered because he was restricted from getting out of the vehicle and from promising leads by Mr. Kleffner.

47. Plaintiff was told that the company could not fire everyone in response to complaints about harassment.

48. Plaintiff was also told that his calling Tom "sleeping beauty" for falling asleep at work was equivalent to being called a n*gger.

49. Plaintiff was next asked if he wanted to transfer to the St. Louis branch.

50. Plaintiff responded by mentioning his protection through the Equal Employment Opportunity Commission ("EEOC.")

51. On or about February 19, 2019, Plaintiff spoke to the EEOC about an inquiry regarding Erie.

52. During the call, Plaintiff was asked whether he had contacted HR.

53. After the call, Plaintiff proceeded to call Erie and was advised that Paula Cruz (HR) was out for lunch.

54. About fifteen (15) minutes later, Adam Reed, the president of the company, called Plaintiff and told Plaintiff that he was being terminating me for his performance.

55. Mr. Reed mentioned Plaintiff's contacting the EEOC during the call.

5

## COUNT I
## DISCRIMINATION AND HARSSMENT IN VIOLATION
## OF THE MISSOURI HUMAN RIGHTS ACT

COMES NOW Plaintiff, Arturo Salcedo, by and through his attorneys of record, Hall Ansley, P.C., and for Count I of his cause of action against Defendant states, alleges and avers to the Court as follows:

56. Plaintiff hereby restates, reincorporates, and realleges all preceding paragraphs as though fully restated herein *in haec verba*.

57. Plaintiff, as someone of African American, is a member of protected group pursuant to the Missouri Human Rights Act.

58. Plaintiff has been subjected to a work environment that was hostile and discriminatory based on Plaintiff's race/ethnicity.

59. Plaintiff was discharged due to his race/ethnicity.

60. Plaintiff is a member of a protected group and was subjected to a discriminatory, unwelcome, and hostile work environment due to his race/ethnicity; a causal nexus exists between the working environment and the Plaintiff's membership in the protected group; the harassment and discrimination impacted a term, condition, or privilege of Plaintiff's employment with Erie Construction; Defendant knew or should of known of the harassment and discrimination and failed to take prompt and impactful remedial action; Plaintiff was subsequently discharged on account of the harassment/discrimination on account of his race/ethnicity.

61. As a direct and proximate result of the harassment/discrimination and hostile working environment, as described herein, Plaintiff has suffered the following:

> (a) Lost income, including but not limited to back pay, front pay and lost benefits;

6

(b) Lost career opportunities, including but not limited to opportunities for advancement, status, pay and benefits; and

(c) Mental and emotional anguish defined as "garden variety" by Missouri law.

62. Pursuant to the MHRA, RSMo. §213.111, Plaintiff is entitled to and hereby requests an award of attorney's fees and post judgment interest at the highest lawful rate on any award or verdict provided.

63. The actions of Defendant were willful, wanton, and in complete indifference to Plaintiff's rights. These actions are sufficient to justify the award of punitive damages to deter Defendant, and other similarly situated defendants, from like conduct in the future.

WHEREFORE, Plaintiff prays for an award of damages against Defendant in an amount determined to be fair and reasonable; for an award of attorney's fees; for an award of post-judgment interest at the highest lawful rate on any judgment rendered; for punitive damages sufficient to deter these defendants and similarly situated defendants from like actions in the future; and for such other and further relief as the Court deems just and proper.

## COUNT II
### Violation of the Missouri Human Rights Act
### Retaliation

COMES NOW Plaintiff, Arturo Salcedo, by and through his attorneys of record, Hall Ansley, P.C., and for Count II of his cause of action against Defendant states, alleges and avers to the Court as follows:

64. Plaintiff hereby restates, reincorporates, and realleges all preceding paragraphs as though fully restated herein *in haec verba*.

65. Defendant terminated Plaintiff because Plaintiff opposed Defendant's discrimination against him and his roommate (Lori) by making internal reports. Defendant also

7

terminated Plaintiff for reaching out to agencies charged with investigating discriminatory actions.

66. The termination violated § 213.070(2), RSMo.

67. The retaliation occurred because Plaintiff opposed Defendant's discrimination based on his race/ethnicity and because Plaintiff opposed Defendant's discrimination and harassment of Lori based on her gender.

68. As a direct and proximate result of Defendant's conduct as described herein, Plaintiff suffered lost income, including but not limited to back pay and front pay, lost career opportunities, including but not limited to opportunities for advancement in status and pay, the loss of employment benefits, and mental and emotional anguish defined as "garden variety" by Missouri law.

69. The retaliatory acts of Defendant were made with malicious or reckless indifference to Plaintiff's protected rights, and/or outrageous because of their evil motive and/or reckless indifference to Plaintiff's rights.

70. As Defendant's conduct complained of herein was intentional, willful, malicious, oppressive, and in reckless disregard of Plaintiff's rights, Plaintiff is entitled to recover and hereby requests punitive damages against Defendant.

71. Pursuant to RSMo. § 213.111(2) of the MHRA, Plaintiff is entitled to and hereby requests an award of attorney's fees.

72. Plaintiff further requests post judgment interest on any award of damages calculated at the highest lawful rate.

8

WHEREFORE, Plaintiff prays for an award of damages Defendant in an amount determined to be fair and reasonable; for an award of attorney's fees; for an award of post-judgment interest at the highest lawful rate on any judgment rendered; for punitive damages sufficient to deter this Defendant, and others similarly situated, from like actions in the future; and for such other and further relief as the Court deems just and proper.

HALL ANSLEY,
A Professional Corporation

By: /s/ Timothy A. Ricker
TIMOTHY A. RICKER
Missouri Bar Number 62050
ADAM P. PIHANA
Missouri Bar Number 59540

3275 East Ridgeview
Springfield, Missouri 65808
Telephone: 417/890-8700
Facsimile: 417/890-8855
Email: tricker@hallansley.com
Email: apihana@hallansley.com

*Attorneys for Plaintiff*

9



**MISSOURI DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS**
# MISSOURI COMMISSION ON HUMAN RIGHTS

MICHAEL L. PARSON
GOVERNOR

ANNA S. HUI
DEPARTMENT DIRECTOR

Martha Staggs
COMMISSION CHAIRPERSON

ALISA WARREN, PH.D.
EXECUTIVE DIRECTOR

Exhibit A

Arturo Salcedo
2739 W. State Street
Springfield, MO 65802
*Via Complainant Attorney Email*

## NOTICE OF RIGHT TO SUE

RE: Arturo Salcedo vs. ERIE CONSTRUCTION MID-WEST, INC.
E-04/19-50837 28E-2019-00884C

The Missouri Commission on Human Rights (MCHR) is terminating its proceedings and issuing this notice of your right to sue under the Missouri Human Rights Act because you have requested a notice of your right to sue.

This letter indicates your right to bring a civil action within 90 days of the date of this notice against the respondent(s) named in the complaint. Such an action may be brought in any circuit court in any county in which the unlawful discriminatory practice is alleged to have occurred, but it must be brought no later than two years after the alleged cause occurred or its reasonable discovery. Upon issuance of this notice, the MCHR is terminating all proceedings relating to the complaint. No person may file or reinstate a complaint with the MCHR after the issuance of a notice of right to sue relating to the same practice or act. You are hereby notified of your right to sue the Respondent(s) named in your compliant in state circuit court. **THIS MUST BE DONE WITHIN 90 DAYS OF THE DATE OF THIS NOTICE OR YOUR RIGHT TO SUE IS LOST.**

You are also notified that the Executive Director is hereby administratively closing this case and terminating all MCHR proceedings relating to it. This notice of right to sue has no effect on the suit-filing period of any federal claims. This notice of right to sue is being issued as required by Section 213.111.1, RSMo, because it has been over 180 days after the filing of the complaint and MCHR has not completed its administrative processing.

Respectfully,

*[signature]*

Alisa Warren, Ph.D.
Executive Director

<u>April 30, 2020</u>
Date

C: additional contacts listed on next page

☒ ☐ ☐ ☐ ☐

3315 W. TRUMAN BLVD.
P.O. BOX 1129
JEFFERSON CITY, MO 65102-1129
PHONE: 573-751-3325

111 N. 7TH STREET, SUITE 903
ST. LOUIS, MO 63101-2100
PHONE: 314-340-7590
FAX: 314-340-7238

P.O. BOX 1300
OZARK, MO 65721-1300

1410 GENESSEE, SUITE 260
KANSAS CITY, MO 64102
FAX: 816-889-3582

106 ARTHUR STREET
SUITE D
SIKESTON, MO 63801-5454
FAX: 573-472-5321

*Missouri Commission on Human Rights is an equal opportunity employer/program. Auxiliary aides and services are available upon request to individuals with disabilities.*
TDD/TTY: 1-800-735-2966 (TDD) Relay Missouri: 711
www.labor.mo.gov/mohumanrights  E-Mail: mchr@labor.mo.gov

RE: Arturo Salcedo vs. ERIE CONSTRUCTION MID-WEST, INC.
E-04/19-50837 28E-2019-00884C

ERIE CONSTRUCTION MID-WEST, INC.
2109-A E. Rockhurst
Springfield, MO 65802

R. Kent Murphree
ATTORNEY AT LAW
200 Dixie Highway
Rossford, OH 43460
*Via Email*

Angie Dernshar, Paralegal
Hall Ansley, PC
3275 East Ridgeview
Springfield, MO 65804
*Via Email*